IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT J. BINSACK, SR., | : | CIVIL ACTION |
| Plaintiff, | : | 42 U.S.C. §1983 |
| | : | |
| v. | : | NO. 4:CV-03-1545 |
| | : | |
| WARDEN DAVID G. KEENHOLD, | : | JURY TRIAL DEMANDED |
| PAUL L. JENNINGS, MICHAEL A. | : | |
| TABERY, LIEUTENANT | : | |
| SHANNON, SERGEANT | : | |
| DOUGHERTY, OFFICER KESSLER | : | |
| OFFICER KRAMER, OFFICER | : | |
| DONATI, OFFICER BRILL, | : | |
| OFFICER CRUZ, JOHN AND JANE | : | |
| DOE JAIL OFFICERS/OFFICIALS, | : | |
| PRIME CARE MEDICAL, INC., | : | |
| NURSE JOYCE, NURSE BECKY, | : | |
| NURSE ESTHER, JOHN AND | : | |
| JANE DOE DOCTORS, NURSES | : | |
| AND HEALTH CARE PROVIDERS, | : | |
| PSYCHIATRIST MARTHA | : | |
| TURNBERG, COUNSELOR GARY | : | |
| MCFARLAND, DONNELL JONES, | : | |
| COUNTY OF MONROE, COUNTY | : | |
| COMMISSIONER JAMES E. | : | |
| CADUE, JEFFREY G. VELANDER, | : | |
| and THOMAS P. SUNDMAKER, | : | |
| Defendants | : | |

## <u>ORDER</u>

**AND NOW,** this _____ day of _____ 2005, upon consideration of the Motion of Defendant, Martha A. Turnberg, M.D., for Summary Judgment and any response thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED** and that the claims of Plaintiff, Scott A. Binsack, Sr. against Defendant, Martha A. Turnberg, M.D. are **DISMISSED** with prejudice.

**BY THE COURT:**

_____
                                          **J.**

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT J. BINSACK, SR., | : | CIVIL ACTION |
| Plaintiff, | : | 42 U.S.C. §1983 |
| | : | |
| v. | : | NO. 4:CV-03-1545 |
| | : | |
| WARDEN DAVID G. KEENHOLD, | : | JURY TRIAL DEMANDED |
| PAUL L. JENNINGS, MICHAEL A. | : | |
| TABERY, LIEUTENANT | : | |
| SHANNON, SERGEANT | : | |
| DOUGHERTY, OFFICER KESSLER | : | |
| OFFICER KRAMER, OFFICER | : | |
| DONATI, OFFICER BRILL, | : | |
| OFFICER CRUZ, JOHN AND JANE | : | |
| DOE JAIL OFFICERS/OFFICIALS, | : | |
| PRIME CARE MEDICAL, INC., | : | |
| NURSE JOYCE, NURSE BECKY, | : | |
| NURSE ESTHER, JOHN AND | : | |
| JANE DOE DOCTORS, NURSES | : | |
| AND HEALTH CARE PROVIDERS, | : | |
| PSYCHIATRIST MARTHA | : | |
| TURNBERG, COUNSELOR GARY | : | |
| MCFARLAND, DONNELL JONES, | : | |
| COUNTY OF MONROE, COUNTY | : | |
| COMMISSIONER JAMES E. | : | |
| CADUE, JEFFREY G. VELANDER, | : | |
| and THOMAS P. SUNDMAKER, | : | |
| Defendants | : | |

**MOTION OF DEFENDANT, MARTHA A. TURNBERG, M.D.,**
**FOR SUMMARY JUDGMENT**

The Defendant, Martha A. Turnberg, M.D., moves the Court as follows:

1.      This action is a prisoner civil rights lawsuit pursuant to 42 U.S.C. Sec. 1983 and

which was commenced by filing a Summons in the Eastern District of Pennsylvania on July 10,

2003.

2.      On August 26, 2003, Judge Padova transferred the case to the Middle District of Pennsylvania.

3.      On August 22, 2003, Plaintiff, Scott J. Binsack, Sr. filed his Complaint against numerous defendants, including, Moving Defendant, Martha A. Turnberg, M.D.   A true and correct copy of the Complaint is attached hereto as Exhibit "A".

4.      Plaintiff gave his deposition in two parts.   The first part of Plaintiff's deposition occurred on February 11, 2005.  The second portion of Plaintiff's deposition occurred on July 5, 2005.  Relevant portions of the transcripts of both portions of Plaintiff's deposition are attached hereto as Exhibit "B".

5.      Plaintiff instituted his Complaint under 42 U.S.C. §1983 against Moving Defendant.  Plaintiff's claims stem from his incarceration at the Monroe County Correctional Facility ("MCCF") in Stroudsburg, Pennsylvania from March 18, 2001 until October 25, 2001. In fact, there were two periods of incarceration at MCCF, the first being interrupted by a transfer on April 3, 2001, Plaintiff was transferred to the Carbon County Correctional Facility ("CCJ"). Plaintiff stayed at CCJ until May 16, 2001, when he returned to MCCF.  *See,* Exhibit B at page 52.  On October 25, 2001, Plaintiff was transferred to another prison facility, SCI – Camp Hill. *See*, Ex. A at paragraph 140 and Exhibit B at page 89.

6.      Generally, Plaintiff alleges that his constitutional rights were violated because he was not granted access to appropriate medical treatment and care while incarcerated at MCCF.

7.      Prime Care Medical Inc. ("Prime Care") was responsible for providing medical treatment to inmates at MCCF.

8.      Moving Defendant was employed as a physician by Prime Care and was assigned to provide medical care to Plaintiff during his incarceration at MCCF.

9.      Plaintiff sets forth numerous allegations against Moving Defendant that amount to no recognizable cause of action.  Plaintiff sets forth allegations against Moving Defendant only in the first count of his Complaint, which encompasses paragraphs 173 through 204.  Those paragraphs set forth allegations against nine employees of the Monroe County Correctional Facility, Prime Care Medical, Inc., three nurses, John and Jane Doe Officers / Officials and John and Jane Doe Doctors as well as other unspecified health care providers.  There are no allegations set forth exclusively against Dr. Turnberg.

10.     Nonetheless, Plaintiff alleges that Moving Defendant used illegal and excessive physical force, permitted him to be assaulted, and conspired to create a hostile and unsafe environment.  *See*, Ex. A at paragraphs 174-176.  Plaintiff also alleges that Moving Defendant failed to provide necessary medical services in a timely and expeditious manner.  *See*, Ex. A at paragraph 183.

11.     Plaintiff alleges that Moving Defendant acted with "deliberate indifference," consisting of failing to administer Plaintiff's psychotropic prescribed medication, causing plaintiff serious withdrawal symptoms.  *See*, Ex. A at paragraph 184(b).  Based on the allegations of fact set forth in the Complaint, this appears to be the allegation directed specifically to Dr. Turnberg.

12.     Plaintiff alleges that he suffered from panic disorder, chronic depression, attention deficit disorder, and chronic pain and stress prior to incarceration.  *See*, Ex. A at paragraph 37.  Plaintiff alleges that to address these conditions he was taking numerous "psychotropic medications" including Paxil, Xanax and Neurontin when he arrived at MCCF.  *See*, Ex. A at page 37.  Plaintiff testified that when he arrived at MCCF he was taking three medications, including Xanax.  *See*, Ex. B at page 48.

13.     Plaintiff alleges that he had to wait an extended period of time before he was permitted to see Moving Defendant regarding these medications.  He made numerous requests to see Moving Defendant by submitting sick call slips, but he did not see her for an extended period nonetheless.   *See*, Ex. A at paragraph 47.   These allegations are not directed at Moving Defendant.  Plaintiff never alleges that Moving Defendant ignored the sick call slips.

14.     Plaintiff's allegations against Moving Defendant consist of his claim that Moving Defendant prescribed "additional" and "alternative" psychotropic medications that caused his symptoms to worsen and caused him to suffer even more severe panic attacks, anxiety, depression, paranoia, high blood pressure and ulcers resulting in hospitalization on October 22, 2001 at the facility at SCI – Camp Hill.  *See*, Ex. A at paragraph 53.  These allegations amount to a claim that Moving Defendant incorrectly prescribed medications.  This represents no more than medical decision-making of Moving Defendant and is no basis for any of Plaintiff's purported claims against Moving Defendant, whatever they may be.

15.     Plaintiff alleges that Moving Defendant re-administered Xanax along with other "psychotropic" medications.  He claims that during a three-week stay at the Carbon County Jail ("CCJ") beginning on April 23, 2001, he received the correct doses of psychotropic medications.  *See*, Ex. A at paragraph 55.  On May 24, 2001 he returned to MCCF.  *See*, Ex. A at paragraph 56.  Moving Defendant alleges that from that between his return to MCCF in May through September 2001, he submitted numerous sick call slips that were intentionally ignored by "defendant medical providers."  *See*, Ex. A at paragraph 76.  He does not allege that Moving Defendant ignored these sick call slips or that it was the fault of Moving Defendant that he could not see her immediately when he requested to see her.

16.     Plaintiff alleges that when he was permitted to see Dr. Turnberg, she again raised the dose of the "psychotropic" medication Desyrel by 50 mg.  *See*, Ex. A at paragraph 77.  He alleges that at the point, he was receiving daily administrations of four psychotropic medications and six other prescribed medications for blood pressure, pain, asthma and other conditions. *See*, Ex. A at page 77.

17.     Plaintiff alleges that he was "highly overmedicated" and suffered "severe side effects."  *See*, Ex. A at page 77.  He alleges that Moving Defendant changed his medication from Xanax to Klonopin.  *See*, Ex. A at page 90.  He also testified at length about the effects of the various medications he was taking, including how they work when taken simultaneously, how they effect the user and how the drugs affect the body.  *See*, Ex. C at pages 252-253.

18.     Plaintiff's allegations amount to an Eight Amendment violation claim.

## STANDARD FOR SUMMARY JUDGMENT

19.     Moving Defendant is permitted to move for summary judgment at any time.  *See*, FED.R.CIV.P. 56.

20.     The Court will consider the motions for summary judgment under the accepted standards for the award of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987).

21.     The United States Court of Appeals for the Third Circuit recognizes the following applicable standards for summary judgment:

> Summary judgment may be entered if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed.R.Civ.P. 56(c).  An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed.2d 202 (1985); Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp., 812 F.2d 141, 144 (3d Cir. 1987).  If the evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted. <u>Anderson</u>, 106 S. Ct. at 2511; <u>Equimark</u>, 812 F.2d at 144.  Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving part, summary judgment is proper."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  <u>Id</u>.

22.     Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must do more than advance the allegations of the complaint in support of its claims.

23.     The nonmoving party must "go beyond the pleadings and her own affidavits, or by the 'deposition, answers to interrogatories, and admissions on file,' designate 'specific fats showing that there is a genuine issue for trial.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

24.     If the nonmovant party bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial."  <u>Chippollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987), <u>cert. Dismissed</u>, 483 U.S. 1052 (1987).

## MOTION FOR SUMMARY JUDGMENT
## BASED ON THE STATUTE OF LIMITATIONS

25.     As a threshold matter, Plaintiff's claim is barred by the applicable statute of limitations.  A summary of the applicable dates follows.  Plaintiff entered the Monroe County Correctional Facility on March 18, 2001 and remained incarcerated there until April 3, 2001.  On April 3, 2001, Plaintiff was transferred to the Carbon County Correctional Facility, where he remained until May 16, 2001.  On May 16, 2001 he returned to MCCF and remained

incarcerated there until October 25, 2001.  Thus, there are two distinct periods of incarceration at MCCF.

26.     Plaintiff only encountered Moving Defendant at MCCF, not at CCJ, since Moving Defendant was involved as an employee of Prime Care Medical.  Prime Care Medical provides medical service to prisoners at MCCF only, not at CCJ.   Therefore, Moving Defendant could only have encountered Plaintiff at MCCF.

27.     Plaintiff's factual allegations against Moving Defendant all relate to the first incarceration at MCCF, between March 18, 2001 and April 3, 2001.

28.     In Pennsylvania, the applicable statute of limitations for claims pursuant 42 U.S.C. §1983 claims is two (2) years.

29.     Plaintiff did not commence this action until July 10, 2003.

30.     Plaintiff is time barred from pursuing any cause of action against Moving Defendant for any acts prior to July 10, 2001.

31.     Thus, summary judgment should be granted in favor of Moving Defendant for all claims related to events that occurred prior to July 10, 2001.  In effect, all of Plaintiff's claims against Moving Defendant are barred by the statute of limitations.

**MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF EVIDENCE TO SUPPORT A VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHTS**

32.     Plaintiff has produced no evidence to support a claim that Moving Defendant failed to provide him proper medical care in violation of his Eighth Amendment rights.  The medication chart in this case demonstrates that Plaintiff received virtually all medications he was scheduled to receive.  Plaintiff complains that his medications were changed from Xanax to other psychotropic medications and that the dosages of his medications were changed, causing severe side effects.  It appears from the medical records that he missed only three doses of psychotropic

medications.  Further, the decision to change his medications or the doses of his medications is with Dr. Turnberg's medical judgment and decision-making capacity.  Plaintiff has been unable to cite anything other than his own testimony to substantiate his many allegations and conspiracy theories.  It is respectfully submitted that there is no genuine issue as to any material facts and that Moving Defendant is entitled to judgment as a matter of law.

33.     The United States Supreme Court has held that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To validly claim a §1983 Eighth Amendment allegation, it is the plaintiff's responsibility to first make an objective showing that the deprivation was sufficiently serious or that the result of the defendant's denial was sufficiently serious.  Thomas v. Dragovich, No. 02-3884, 2005 U.S. App. LEXIS 14155, 9 (3d Cir. July 13, 2005).  The plaintiff must make a subjective showing that the defendant acted with a sufficiently culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294 (1991)).  Plaintiff has produced no evidence to show any alleged deprivation of medical care sufficiently serious or that Moving Defendant acted intentionally or with a culpable state of mind.

34.     Further, Plaintiff's failure to produce an expert medical opinion eviscerates his claim for cruel and unusual punishment based on his allegation that he was deprived of medication.  Where laymen are presented with medical claims that are not obviously serious medical conditions, expert medical opinion is proper.  Boring v. Kozakiewicz, 833 F.2d 468, 473 (1987), see also Perason v. Johnson, 126 F.3d 454 (W.D. Pa. 1998).  In the instant matter, the psychological effects of pyschotropic drugs is beyond the comprehension of a layperson and, for

this reason, medical testimony is needed to demonstrate the "serious" nature of the alleged denial or deprivation of medication.

35. The deadline for expert reports has passed with no such report from Plaintiff.

36. Plaintiff has produced no evidence to show that he was the victim of deliberate indifference at the hands of Moving Defendant. Deliberate indifference to serious medical needs may exist in a variety of circumstances, including intentional refusal to provide care, delay in medical treatment for non-medical reasons, prevention by authorities of recommended treatment, where denial of medical treatment results in undue suffering and where prison officials erect arbitrary procedures that result in interminable delays. Douglas v. Hill, No. 95-6497, 1996 U.S. Dist. LEXIS 18057, 21-2 (E.D. Pa. 1996).

37. Plaintiff has failed to demonstrate that Moving Defendant acted in any of the above proscribed manners.

**MOTION FOR SUMMARY JUDGMENT BASED
ON FAILURE ESTABLISH A *PRIMA FACIE* CASE OF MEDICAL MALPRACTICE**

38. Plaintiff's factual allegations, as they relate to Moving Defendant, amount to a claim that Moving Defendant deprived him of necessary medications in violation of his Eight Amendment rights.

39. Moving Defendant is a psychiatrist. She encountered Plaintiff in her role as a psychiatrist while working as an employee of Prime Care Medical. Prime Care Medical provided medical service to inmates at MCCF. The record demonstrates that Moving Defendant did in fact prescribe medications for Plaintiff, including changes in the dosages of the medication he was taking.

40. Despite these circumstances, there is no medical malpractice cause of action against Moving Defendant.

41.     Moving Defendant filed a Motion to Dismiss on December 20, 2004, arguing that the case against her should be dismissed because Plaintiff had not filed a Certificate of Merit in compliance with Pennsylvania Rule of Civil Procedure 1042.3.

42.     On January 21, 2005, Plaintiff filed a Brief in Opposition to the Motion to Dismiss.   In his Brief, Plaintiff stated: "Plaintiff has not alleged that Moving Defendant's treatment of him deviated from an acceptable professional standard."  A true and correct copy of Plaintiff's January 21, 2005 Brief in Response to Motion to Dismiss is attached hereto as Exhibit "C".

43.     On the basis of Plaintiff's response, the Court issued an Order on February 23, 2005, denying the Motion to Dismiss.  The Court states that Plaintiff asserted that he did not plead a medical malpractice claim against Moving Defendant.  The Court accepted Plaintiff's assertion that he had not pleaded a medical malpractice claim against Moving Defendant.  On that basis, the Court denied the Motion.  A true and correct copy of the Court's February 23, 2005 Report and Recommendation is attached hereto as Exhibit "D".

44.     Plaintiff's statement that he is not pursuing a medical malpractice claim against Moving Defendant constitutes a waiver of any medical malpractice claim against Moving Defendant.

45.     The above notwithstanding, Plaintiff cannot pursue a medical malpractice claim against Moving Defendant because Plaintiff has not submitted an expert report critical of the care Moving Defendant rendered.

46.     In Pennsylvania, a Plaintiff seeking to establish a claim for medical malpractice must show through competent medical testimony that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) that the breach of the duty was the proximate

cause or substantial factor in causing harm to the plaintiff; and (4) the plaintiff suffered damages as a direct result of the harm.  Ray v. Abington Township, 2004 WL 1175737 (E.D. Pa.), *citing* Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990).

47.     Under Pennsylvania law, it is well settled that in order to prove medical negligence, a party must present expert testimony to establish a *prima facie* case.  Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990).

48.     Plaintiff has produced no such expert report and without such cannot support a claim for medical malpractice.   On May 27, 2005, the Court issued an Amended Case Management Order establishing the following deadlines: 1) July 27, 2005 for the submission of Plaintiff's expert reports to defendant; 2) August 15, 2005 for the submission of expert reports to Plaintiff; 3) September 6, 2005 for any supplements to expert reports.   The deadline for Plaintiff's expert reports has now passed without any expert report whatsoever submitted by Plaintiff with regard to Moving Defendant.

49.     In sum, Plaintiff has no claim for medical malpractice against Moving Defendant, both because of his own waiver of such a claim and because of his failure to produce an expert report critical of Moving Defendant within the deadline established by the Court.   All of Plaintiff's claims related to any alleged deprivation of medications or any medication related issue should be dismissed.

## MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO ESTABLISH ANY INTENTIONAL TORT CAUSE OF ACTION

50.     With regard to Moving Defendant, the factual allegations Plaintiff has asserted and the evidence Plaintiff produced in discovery, in the form of Plaintiff's deposition testimony, all relate to one subject: the administration of various medications and changes in the dosages of

those medications.  For the reasons set forth above, Plaintiff has no medical malpractice claim against Moving Defendant.

51.     It is unclear what theory of liability Plaintiff is asserting against Moving Defendant.  Plaintiff makes no allegations related to informed consent.  Even if Plaintiff had made such an allegation, the administration of medication cannot be part of an informed consent claim.  Rather, such a claim must be a medical malpractice claim.

52.     Plaintiff brings this action pursuant to 42 U.S.C. §1983.  *See*, Exhibit A at paragraph 1.

53.     To make out a violation of Section 1983, Plaintiff must show that a person acting under color of state law deprived him of a federal right.  Marable v. West Pottsgrove Twp., 2005 WL 1625055 (E.D. Pa.), *citing* Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

54.     Plaintiff never identified a federal right he was deprived of by Moving Defendant.

55.     Plaintiff's allegations could conceivably be construed to make out claims according to two theories of recovery: 1) assault and battery and 2) excessive physical force.

56.     Plaintiff has failed to produce evidence sufficient to create a genuine issue of fact to survive summary judgment with regard to either of these theories of recovery.

57.     Under Pennsylvania law, an assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done.  Benn v. Universal Health Systems, Inc., 2001 WL 1251207, *11 (E.D. Pa. 2001), *citing* Cohen v. Lit Bros., 70 A.3d 419, 421 (Pa. Super. 1950).

58.     Plaintiff has not produced any evidence to support a claim that Moving Defendant assaulted or battered him.

59.     Plaintiff was asked at his deposition if Moving Defendant was involved in *any* of the physical or verbal abuse that he allegedly suffered.  He responded in the negative.  *See,* Exhibit B at page 294.

60.     Plaintiff also testified that Moving Defendant never witnessed physical or verbal abuse that he suffered at the hands of prison guards.  *See*, Exhibit B at pages 294-295.

61.     Plaintiff alleges that Moving Defendant was part of a "conspiracy" with other MCCF employees to permit him to be assaulted and/or battered.  Moving Defendant has produced no evidence of such a conspiracy.  By his own admission, he acknowledges that Moving Defendant was not present during any of the alleged incidents of assault and / or battery.  *See*, Exhibit B at 295.  By the nature of her involvement in this case as a medical provider, Moving Defendant would only have encountered Plaintiff in an area of the facility specifically set aside for the provision of medical care.  Moving Defendant would never have been amongst the inmates.  She would never have set foot in any of the cell blocks.  Plaintiff has produced no evidence Moving Defendant's involvement in any alleged conspiracy to assault or batter him.

62.     By his own testimony, Plaintiff has demonstrated that he has no cause of action against Moving Defendant based on a theory of assault or battery.

63.     Plaintiff also alleges that he suffered "excessive physical force."  *See*, Exhibit A at paragraph 174.

64.     Pennsylvania law permits a Plaintiff to recover on a claim of excessive physical force. Collins v. Klotz, 1994 W.L. 371479, *3 (E.D. Pa.).

65.     For the same reasons cited above, Plaintiff has produced no evidence against Moving Defendant to support a claim that there is a genuine issue of fact sufficient to defeat a summary judgment claim based on a theory of excessive physical force.  Plaintiff denied any

physical force put upon him by Moving Defendant.  Without evidence of such, there can be no basis for a claim that Moving Defendant used excessive physical force against him.

66.    Plaintiff is left without a cause of action based on assault and/or battery or excessive physical force upon which to base his claim against Moving Defendant.

67.    Plaintiff has produced no evidence to form the basis of any intentional tort claims against Moving Defendant.

68.    The testimony of Plaintiff and the records in this case demonstrate that Moving Defendant's interaction with Plaintiff was limited to a few visits, beginning with a "short discussion" on March 18, 2001 about Xanax.  *See*, Exhibit B at pages 41-43.   The purpose of which was to administer the psychiatric medications Plaintiff was taking.  Co-defendant Prime Care Medical, an organization that contracted with the prison system to provide medical care at MCCF, employed Moving Defendant.  Moving Defendant's contact with Plaintiff was limited to the performance of her duties as an employee of Prime Care Medical.  She took no part in Plaintiff's incarceration except for the few times she met with him and adjusted his medications. Since Plaintiff has produced no expert report he cannot establish any cause of action based on the medications Moving Defendant prescribed, Plaintiff has no medical malpractice claim against Moving Defendant.   Plaintiff alleges that he suffered side effects caused by changes in the medications he received and the doses he was administered.   Again, without expert reports, Plaintiff cannot support a cause of action based on these allegations.

### IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT
### BASED ON THE MENTAL HEALTH PROCEDURES ACT

69.    Moving Defendant is immune from civil liability pursuant to the Pennsylvania Mental Health Procedures Act ("MHPA").  *See*, 50 Pa.C.S.A. §§7101 *et seq.*

70.    The MHPA applies to all voluntary inpatient treatment of mentally ill persons.

71.     Based on Plaintiff's own statements and the medications he was taking, Plaintiff is considered a "mentally ill" person and MCCF qualifies as a designated facility pursuant to MHPA.  *See*, <u>Farago v. Sacred Heart General Hospital</u>, 522 Pa. 410, 562 A.2d 300, 303 (1989).

72.     Section 7114 of the MHPA affords civil immunity protection to physicians treating patients suffering from mental illness.  Immunity can only be overcome by evidence of willful misconduct or gross negligence.

73.     Plaintiff has produced no evidence of willful misconduct or gross negligence.

74.     Regarding medication decisions, all of Moving Defendants decisions constitute ordinary medical judgments made as a physician within the course of her employment with Prime Care.

75.     Plaintiff's testimony establishes that the care and treatment he received from Moving Defendant came as a result of his incarceration at the Monroe County Correctional Facility and the regimen of anti-depressant medications he was taking prior to his incarceration. Thus, for purposes of the MHPA, he was an inpatient receiving voluntary treatment of a mental illness.

76.     As a physician who treated Plaintiff for mental illness in a facility to which he was confined, Moving Defendant is immune form civil liability for any decisions she made as part of that care.  Such decisions from which she is immune from liability include her alleged decisions to change the dosages of medications Plaintiff was taking while at Monroe County Correctional Facility.

**WHEREFORE**, Moving Defendant, Martha A. Turnberg, M.D., respectfully requests this Honorable Court to enter the attached Order granting Summary Judgment and dismissing all claims against her by Plaintiff, Scott J. Binsack, Sr., with prejudice.

Respectfully Submitted,

**KILCOYNE & ASSOCIATES, LLC**


BY:   /S/ GREGORY S. NESBITT_____
      GREGORY S. NESBITT, ESQUIRE
      Attorney for Defendant,
      Martha A. Turnberg, M.D.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT J. BINSACK, SR., | : | CIVIL ACTION |
| Plaintiff, | : | 42 U.S.C. §1983 |
| | : | |
| v. | : | NO. 4:CV-03-1545 |
| | : | |
| WARDEN DAVID G. KEENHOLD, | : | JURY TRIAL DEMANDED |
| PAUL L. JENNINGS, MICHAEL A. | : | |
| TABERY, LIEUTENANT | : | |
| SHANNON, SERGEANT | : | |
| DOUGHERTY, OFFICER KESSLER | : | |
| OFFICER KRAMER, OFFICER | : | |
| DONATI, OFFICER BRILL, | : | |
| OFFICER CRUZ, JOHN AND JANE | : | |
| DOE JAIL OFFICERS/OFFICIALS, | : | |
| PRIME CARE MEDICAL, INC., | : | |
| NURSE JOYCE, NURSE BECKY, | : | |
| NURSE ESTHER, JOHN AND | : | |
| JANE DOE DOCTORS, NURSES | : | |
| AND HEALTH CARE PROVIDERS, | : | |
| PSYCHIATRIST MARTHA | : | |
| TURNBERG, COUNSELOR GARY | : | |
| MCFARLAND, DONNELL JONES, | : | |
| COUNTY OF MONROE, COUNTY | : | |
| COMMISSIONER JAMES E. | : | |
| CADUE, JEFFREY G. VELANDER, | : | |
| and THOMAS P. SUNDMAKER, | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT, MARTHA A.
TURNBERG, M.D., FOR SUMMARY JUDGMENT**

**I.      BRIEF PROCEDURAL HISTORY**

Plaintiff, Scott J. Binsack, Sr. ("Plaintiff") instituted this action by filing a summons in

the United States District Court for the Eastern District of Pennsylvania July 10, 2003 and a

Complaint on or about August 22, 2003.  By Order dated August 26, 2003, this matter was

transferred to the Middle District of Pennsylvania.

## II.    BRIEF FACTUAL HISTORY

Plaintiff's claims stem from his incarceration at the Monroe County Correctional Facility ("MCCF") in Stroudsburg, Pennsylvania from March 18, 2001 until October 25, 2001.  In fact, there were two periods of incarceration at MCCF, the first being interrupted by a transfer on April 3, 2001, Plaintiff was transferred to the Carbon County Correctional Facility ("CCJ"). Plaintiff stayed at CCJ until May 16, 2001, when he returned to MCCF.  *See,* Exhibit B at page 52.  On October 25, 2001, Plaintiff was transferred to another prison facility, SCI – Camp Hill. *See*, Ex. A at paragraph 140 and Exhibit B at page 89.

Generally, Plaintiff alleges that his constitutional rights were violated because he was not granted access to appropriate medical treatment and care while incarcerated at MCCF.  Prime Care Medical Inc. ("Prime Care") was responsible for providing medical treatment to inmates at MCCF.  Moving Defendant was employed as a physician by Prime Care and was assigned to provide medical care to Plaintiff during his incarceration at MCCF.

Plaintiff alleges that Moving Defendant used illegal and excessive physical force, permitted him to be assaulted, and conspired to create a hostile and unsafe environment.  *See*, Ex. A at paragraphs 174-176.   Plaintiff also alleges that Moving Defendant failed to provide necessary medical services in a timely and expeditious manner.  *See*, Ex. A at paragraph 183. Plaintiff alleges that Moving Defendant acted with "deliberate indifference," consisting of failing to administer Plaintiff's psychotropic prescribed medication, causing plaintiff serious withdrawal symptoms.  *See*, Ex. A at paragraph 184(b).  Based on the allegations of fact set forth in the Complaint, this appears to be the allegation directed specifically to Dr. Turnberg.

Plaintiff alleges that he suffered from panic disorder, chronic depression, attention deficit disorder, and chronic pain and stress prior to incarceration.  *See*, Ex. A at paragraph 37.  Plaintiff

alleges that to address these conditions he was taking numerous "psychotropic medications" including Paxil, Xanax and Neurontin when he arrived at MCCF. *See*, Ex. A at page 37. Plaintiff testified that when he arrived at MCCF he was taking three medications, including Xanax. *See*, Ex. A at page 48. Plaintiff alleges that he had to wait an extended period of time before he was permitted to see Moving Defendant regarding these medications. He made numerous requests to see Moving Defendant by submitting sick call slips, but he did not see her for an extended period nonetheless. *See*, Ex. A at paragraph 47. These allegations are not directed at Moving Defendant. Plaintiff never alleges that Moving Defendant ignored the sick call slips.

Plaintiff's allegations against Moving Defendant consist of his claim that Moving Defendant prescribed "additional" and "alternative" psychotropic medications that caused his symptoms to worsen and caused him to suffer even more severe panic attacks, anxiety, depression, paranoia, high blood pressure and ulcers resulting in hospitalization on October 22, 2001 at the facility at SCI – Camp Hill. *See*, Ex. A at paragraph 53. These allegations amount to a claim that Moving Defendant incorrectly prescribed medications. This represents no more than medical decision-making of Moving Defendant and is no basis for any of Plaintiff's purported claims against Moving Defendant, whatever they may be.

Plaintiff alleges that Moving Defendant re-administered Xanax along with other "psychotropic" medications. He claims that during a three-week stay at the Carbon County Jail ("CCJ") beginning on April 23, 2001, he received the correct doses of psychotropic medications. *See*, Ex. A at paragraph 55. On May 24, 2001 he returned to MCCF. *See*, Ex. A at paragraph 56. Moving Defendant alleges that from that between his return to MCCF in May through September 2001, he submitted numerous sick call slips that were intentionally ignored by

"defendant medical providers."   *See*, Ex. A at paragraph 76.  He does not allege that Moving Defendant ignored these sick call slips or that it was the fault of Moving Defendant that he could not see her immediately when he requested to see her.

Plaintiff alleges that when he was permitted to see Dr. Turnberg, she again raised the dose of the "psychotropic" medication Desyrel by 50 mg.  *See*, Ex. A at paragraph 77.  He alleges that at the point, he was receiving daily administrations of four psychotropic medications and six other prescribed medications for blood pressure, pain, asthma and other conditions. *See*, Ex. A at page 77.

Plaintiff alleges that he was "highly overmedicated" and suffered "severe side effects."  *See*, Ex. A at page 77.  He alleges that Moving Defendant changed his medication from Xanax to Klonopin.  *See*, Ex. A at page 90.  He also testified at length about the effects of the various medications he was taking, including how they work when taken simultaneously, how they effect the user and how the drugs affect the body.  *See*, Ex. C at pages 252-253.

## III.   LEGAL ISSUE

WHETHER THIS HONORABLE COURT SHOULD GRANT DR. TURNBERG'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Suggested Answer:    In the affirmative.

WHETHER THIS HONORABLE COURT SHOULD GRANT DR. TURNBERG'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO PRODUCE EVIDENCE THAT HE SUFFERED INADEQUATE CARE OR DELIBERATE INDIFFERENCE ATTRIBUTABLE TO DR. TURNBERG.

Suggested Answer:    In the affirmative

WHETHER THIS HONORABLE COURT SHOULD GRANT DR. TURNBERG'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF'S CLAIMS THAT HE WAS DEPRIVED OF NECESSARY MEDICATIONS LACK THE SUPPORT OF EXPERT TESTIMONY REQUIRED TO PROVIDE EVIDENCE TO ESTABLISH A *PRIMA FACIE* CASE OF MEDICAL MALPRACTICE, AND, ALTERNATIVELY, BECAUSE PLAINTIFF, BY HIS OWN ADMISSION, HAS STATED THAT HE HIS NOT CLAIMING MEDICAL MALPRACTICE AGAINST DR. TURNBERG

Suggested Answer:    In the affirmative.

WHETHER THIS HONORABLE COURT SHOULD GRANT DR. TURNBERG'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS FAILED TO PROVIDE EVIDENCE TO ESTABLISH A *PRIMA FACIE* CASE OF ASSAULT AND/OR BATTERY AND EXCESSIVE PHYSICAL FORCE AGAINST DR. TURNBERG

Suggested Answer:    In the affirmative.

WHETHER THIS HONORABLE COURT SHOULD GRANT DR. TURNBERG'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE PENNSYLVANIA MENTAL HEALTH PROCEDURES ACT RENDERS DR. TURNBERG IMMUNE FROM CIVIL LIABILITY.

Suggested Answer:    In the affirmative.

## IV.    STANDARD OF REVIEW

Moving Defendant is permitted to move for summary judgment at any time.  *See*, FED.R.CIV.P. 56.

The Court will consider the motions for summary judgment under the accepted standards for the award of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987).  The United States Court of Appeals for the Third Circuit recognizes the following applicable standards for summary judgment:

Summary judgment may be entered if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Fed.R.Civ.P. 56(c).  An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

106 S.Ct. 2505, 2510, 91 L. Ed.2d 202 (1985); <u>Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.</u>, 812 F.2d 141, 144 (3d Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  <u>Anderson</u>, 106 S. Ct. at 2511; <u>Equimark</u>, 812 F.2d at 144.  Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving part, summary judgment is proper."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  <u>Id</u>.

Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must do more than advance the allegations of the complaint in support of its claims.  The nonmoving party must "go beyond the pleadings and her own affidavits, or by the 'deposition, answers to interrogatories, and admissions on file,' designate 'specific fats showing that there is a genuine issue for trial.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If the nonmovant party bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial."  <u>Chippollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987), <u>cert. Dismissed</u>, 483 U.S. 1052 (1987).

## V.   LEGAL ARGUMENT

A.   <u>Plaintiff's claims stemming from events that occurred prior to July 10, 2001 are barred by the applicable statute of limitations</u>.

Plaintiff's claim is barred by the applicable statute of limitations.  A summary of the applicable dates follows.  Plaintiff entered the Monroe County Correctional Facility on March 18, 2001 and remained incarcerated there until April 3, 2001.  On April 3, 2001, Plaintiff was transferred to the Carbon County Correctional Facility, where he remained until May 16, 2001.  On May 16, 2001 he returned to MCCF and remained incarcerated there until October 25, 2001.  Thus, there are two distinct periods of incarceration at MCCF.

Plaintiff only encountered Moving Defendant at MCCF, not at CCJ, since Moving Defendant was involved as an employee of Prime Care Medical. Prime Care Medical provides medical service to prisoners at MCCF only, not at CCJ. Therefore, Moving Defendant could only have encountered Plaintiff at MCCF. Plaintiff's factual allegations against Moving Defendant all relate to the first incarceration at MCCF, between March 18, 2001 and April 3, 2001. Plaintiff has produced no evidence to establish that Moving Defendant had any contact with Plaintiff between May 16, 2001 and October 25, 2001.

In Pennsylvania, the applicable statute of limitations for claims pursuant 42 U.S.C. §1983 claims is two (2) years. Plaintiff did not commence this action until July 10, 2003. Plaintiff is time barred from pursuing any cause of action against Moving Defendant for any acts prior to July 10, 2001. Thus, summary judgment should be granted in favor of Moving Defendant for all claims related to events that occurred prior to July 10, 2001. In effect, all of Plaintiff's claims against Moving Defendant are barred by the statute of limitations.

B.    Plaintiff did not suffer inadequate medical care or deliberate indifference attributable to Dr. Turnberg.

Plaintiff has produced no evidence to support a claim that Moving Defendant failed to provide him proper medical care in violation of his Eighth Amendment rights. The medication chart in this case demonstrates that Plaintiff received virtually all medications he was scheduled to receive. Plaintiff complains that his medications were changed from Xanax to other psychotropic medications and that the dosages of his medications were changed, causing severe side effects. It appears from the medical records that he missed only three doses of psychotropic medications. Further, the decision to change his medications or the doses of his medications is with Dr. Turnberg's medical judgment and decision-making capacity. Plaintiff has been unable to cite anything other than his own testimony to substantiate his many allegations and conspiracy

theories.  It is respectfully submitted that there is no genuine issue as to any material facts and that Moving Defendant is entitled to judgment as a matter of law.

The United States Supreme Court has held that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To validly claim a §1983 Eighth Amendment allegation, it is the plaintiff's responsibility to first make an objective showing that the deprivation was sufficiently serious or that the result of the defendant's denial was sufficiently serious.  Thomas v. Dragovich, No. 02-3884, 2005 U.S. App. LEXIS 14155, 9 (3d Cir. July 13, 2005).  The plaintiff must make a subjective showing that the defendant acted with a sufficiently culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294 (1991)). Plaintiff has produced no evidence to show any alleged deprivation of medical care sufficiently serious or that Moving Defendant acted intentionally or with a culpable state of mind.

Further, Plaintiff's failure to produce an expert medical opinion eviscerates his claim for cruel and unusual punishment based on his allegation that he was deprived of medication. Where laymen are presented with medical claims that are not obviously serious medical conditions, expert medical opinion is proper.  Boring v. Kozakiewicz, 833 F.2d 468, 473 (1987), see also Pearson v. Johnson, 126 F.3d 454 (W.D. Pa. 1998).  In the instant matter, the psychological effects of pyschotropic drugs is beyond the comprehension of a layperson and, for this reason, medical testimony is needed to demonstrate the "serious" nature of the alleged denial or deprivation of medication.

The deadline for expert reports has passed with no such report from Plaintiff.

Finally, Plaintiff has produced no evidence to show that he was the victim of deliberate indifference at the hands of Moving Defendant.  Deliberate indifference to serious medical needs

may exist in a variety of circumstances, including intentional refusal to provide care, delay in medical treatment for non-medical reasons, prevention by authorities of recommended treatment, where denial of medical treatment results in undue suffering and where prison officials erect arbitrary procedures that result in interminable delays.  Douglas v. Hill, No. 95-6497, 1996 U.S. Dist. LEXIS 18057, 21-2 (E.D. Pa. 1996).

Plaintiff has failed to demonstrate that Moving Defendant acted in any of the above proscribed manners.

      C.      <u>By his own admission, Plaintiff is not asserting a medical malpractice claim based on the medications from which he was allegedly deprived.</u>

Plaintiff's factual allegations, as they relate to Moving Defendant, amount to a claim that Moving Defendant deprived him of necessary medications in violation of his Eight Amendment rights.

Moving Defendant is a psychiatrist.  She encountered Plaintiff in her role as a psychiatrist while working as an employee of Prime Care Medical.  Prime Care Medical provided medical service to inmates at MCCF.  The record demonstrates that Moving Defendant did in fact prescribe medications for Plaintiff, including changes in the dosages of the medication he was taking. Despite these circumstances, there is no medical malpractice cause of action against Moving Defendant.

Moving Defendant filed a Motion to Dismiss on December 20, 2004, arguing that the case against her should be dismissed because Plaintiff had not filed a Certificate of Merit in compliance with Pennsylvania Rule of Civil Procedure 1042.3.  On January 21, 2005, Plaintiff filed a Brief in Opposition to the Motion to Dismiss.  See, Exhibit "C".  In his Brief, Plaintiff. stated: "Plaintiff has not alleged that Moving Defendant's treatment of him deviated from an

acceptable professional standard."  On the basis of Plaintiff's response, the Court issued an Order on February 23, 2005, denying the Motion to Dismiss.  The Court states that Plaintiff asserted that he did not plead a medical malpractice claim against Moving Defendant.  The Court accepted Plaintiff's assertion that he had not pleaded a medical malpractice claim against Moving Defendant.  On that basis, the Court denied the Motion.  *See,* Exhibit "C".

Plaintiff's statement that he is not pursuing a medical malpractice claim against Moving Defendant constitutes a waiver of any medical malpractice claim against Moving Defendant.

      D.    <u>Plaintiff's claims that he was deprived of necessary medications lacks the support of expert testimony required to establish a *prima facie* case of medical malpractice, and for that reason Plaintiff's claims related to medication should be dismissed</u>.

Plaintiff cannot pursue a medical malpractice claim against Moving Defendant because Plaintiff has not submitted an expert report critical of the care Moving Defendant rendered.

In Pennsylvania, a Plaintiff seeking to establish a claim for medical malpractice must show through competent medical testimony that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) that the breach of the duty was the proximate cause or substantial factor in causing harm to the plaintiff; and (4) the plaintiff suffered damages as a direct result of the harm.  <u>Ray v. Abington Township</u>, 2004 WL 1175737 (E.D. Pa.), *citing* <u>Mitzelfelt v. Kamrin</u>, 584 A.2d 888, 891 (Pa. 1990).  Under Pennsylvania law, it is well settled that in order to prove medical negligence, a party must present expert testimony to establish a *prima facie* case.  <u>Mitzelfelt v. Kamrin</u>, 584 A.2d 888, 892 (Pa. 1990).

Plaintiff has produced no such expert report and without such cannot support a claim for medical malpractice.  On May 27, 2005, the Court issued an Amended Case Management Order establishing the following deadlines: 1) July 27, 2005 for the submission of Plaintiff's expert reports to defendant; 2) August 15, 2005 for the submission of expert reports to Plaintiff; 3)

September 6, 2005 for any supplements to expert reports.  The deadline for Plaintiff's expert reports has now passed without any expert report whatsoever submitted by Plaintiff with regard to Moving Defendant.

In sum, Plaintiff has no claim for medical malpractice against Moving Defendant, both because of his own waiver of such a claim and because of his failure to produce an expert report critical of Moving Defendant within the deadline established by the Court.  <u>All of Plaintiff's claims related to any alleged deprivation of medications should be dismissed</u>.

> E.   <u>Plaintiff has failed to produce evidence against Dr. Turnberg sufficient to establish a prima facie case of assault and / or battery or excessive physical force</u>.

With regard to Moving Defendant, the factual allegations Plaintiff has asserted and the evidence Plaintiff produced in discovery, in the form of Plaintiff's deposition testimony, all relate to one subject: the administration of various medications and changes in the dosages of those medications.  For the reasons set forth above, Plaintiff has no medical malpractice claim against Moving Defendant.

It is unclear what theory of liability Plaintiff is asserting against Moving Defendant. Plaintiff makes no allegations related to informed consent.  Even if Plaintiff had made such an allegation, the administration of medication cannot be part of an informed consent claim. Rather, such a claim must be a medical malpractice claim.

Plaintiff brings this action pursuant to 42 U.S.C. §1983.  *See*, Exhibit A at paragraph 1.

To make out a violation of Section 1983, Plaintiff must show that a person acting under color of state law deprived him of a federal right.  <u>Marable v. West Pottsgrove Twp</u>., 2005 WL 1625055 (E.D. Pa.), *citing* <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). <u>Plaintiff never identified a federal right he was deprived of by Moving Defendant</u>. Plaintiff's

allegations could conceivably be construed to make out claims according to two theories of recovery: 1) assault and battery and 2) excessive physical force.

Plaintiff has failed to produce evidence sufficient to create a genuine issue of fact to survive summary judgment with regard to either of these theories of recovery. Under Pennsylvania law, an assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done. Benn v. Universal Health Systems, Inc., 2001 WL 1251207, *11 (E.D. Pa. 2001), *citing* Cohen v. Lit Bros., 70 A.3d 419, 421 (Pa. Super. 1950).

Plaintiff has not produced any evidence to support a claim that Moving Defendant assaulted or battered him. Plaintiff was asked at his deposition if Moving Defendant was involved in *any* of the physical or verbal abuse that he allegedly suffered. He responded in the negative. *See,* Exhibit B at page 294. Plaintiff also testified that Moving Defendant never witnessed physical or verbal abuse that he suffered at the hands of prison guards. *See*, Exhibit B at pages 294-295.

Plaintiff alleges that Moving Defendant was part of a "conspiracy" with other MCCF employees to permit him to be assaulted and/or battered. Moving Defendant has produced no evidence of such a conspiracy. By his own admission, he acknowledges that Moving Defendant was not present during any of the alleged incidents of assault and / or battery. *See*, Exhibit B at 295. By the nature of her involvement in this case as a medical provider, Moving Defendant would only have encountered Plaintiff in an area of the facility specifically set aside for the provision of medical care. Moving Defendant would never have been amongst the inmates. She would never have set foot in any of the cell blocks. Plaintiff has produced no evidence Moving Defendant's involvement in any alleged conspiracy to assault or batter him. By his own

testimony, Plaintiff has demonstrated that he has no cause of action against Moving Defendant based on a theory of assault or battery.

Plaintiff also alleges that he suffered "excessive physical force."  *See*, Exhibit A at paragraph 174.  Pennsylvania law permits a Plaintiff to recover on a claim of excessive physical force.  Collins v. Klotz, 1994 W.L. 371479, *3 (E.D. Pa.).  For the same reasons cited above, Plaintiff has produced no evidence against Moving Defendant to support a claim that there is a genuine issue of fact sufficient to defeat a summary judgment claim based on a theory of excessive physical force.   Plaintiff denied any physical force put upon him by Moving Defendant.  Without evidence of such, there can be no basis for a claim that Moving Defendant used excessive physical force against him.  Plaintiff is left without a cause of action based on assault and/or battery or excessive physical force upon which to base his claim against Moving Defendant.

Plaintiff has produced no evidence to form the basis of any intentional tort claims against Moving Defendant.  The testimony of Plaintiff and the records in this case demonstrate that Moving Defendant's interaction with Plaintiff was limited to a few visits, beginning with a "short discussion" on March 18, 2001 about Xanax.  *See*, Exhibit B at pages 41-43.   The purpose of which was to administer the psychiatric medications Plaintiff was taking.  Co-defendant Prime Care Medical, an organization that contracted with the prison system to provide medical care at MCCF, employed Moving Defendant.  Moving Defendant's contact with Plaintiff was limited to the performance of her duties as an employee of Prime Care Medical.  She took no part in Plaintiff's incarceration except for the few times she met with him and adjusted his medications.

Since Plaintiff has produced no expert report he cannot establish any cause of action based on the medications Moving Defendant prescribed, Plaintiff has no medical malpractice claim against Moving Defendant.  Plaintiff alleges that he suffered side effects caused by changes in the medications he received and the doses he was administered.  Again, without expert reports, Plaintiff cannot support a cause of action based on these allegations.  Finally, for the reasons cited above, he cannot establish in intentional tort cause of action against Moving Defendant.

    F.    <u>Moving Defendant is immune from civil liability pursuant to the Pennsylvania Mental Health Procedures Act</u>

Moving Defendant is immune from civil liability pursuant to the Pennsylvania Mental Health Procedures Act ("MHPA").  *See*, 50 Pa.C.S.A. §§7101 *et seq*.  The MHPA applies to all voluntary inpatient treatment of mentally ill persons.  Based on Plaintiff's own statements and the medications he was taking, Plaintiff is considered a "mentally ill" person and MCCF qualifies as a designated facility pursuant to MHPA.  *See*, <u>Farago v. Sacred Heart General Hospital</u>, 522 Pa. 410, 562 A.2d 300, 303 (1989).  Section 7114 of the MHPA affords civil immunity protection to physicians treating patients suffering from mental illness.

> (a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, **a physician**, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, **shall not be civilly or criminally liable for such decision or for any of its consequences.** (Emphasis added)

Plaintiff has produced no evidence of willful misconduct or gross negligence.  Regarding medication decisions, all of Moving Defendants decisions constitute ordinary medical judgments made as a physician within the course of her employment with Prime Care.  Plaintiff's testimony

establishes that the care and treatment he received from Moving Defendant came as a result of his incarceration at the Monroe County Correctional Facility and the regimen of anti-depressant medications he was taking prior to his incarceration.   Thus, for purposes of the MHPA, he was an inpatient receiving voluntary treatment of a mental illness.   As a physician who treated Plaintiff for mental illness in a facility to which he was confined, Moving Defendant is immune form civil liability for any decisions she made as part of that care.   Such decisions from which she is immune from liability include her alleged decisions to change the dosages of medications Plaintiff was taking while at Monroe County Correctional Facility.

**VI.    CONCLUSION**

Summary judgment in favor of Defendant, Martha A. Turnberg, M.D., dismissing with prejudice all of Plaintiff's claims is appropriate for the following reasons:

1.      Plaintiff's claims are barred by the statute of limitations.  Plaintiff filed his summons on July 10, 2003.  Plaintiff failed to establish any evidence that Dr. Turnberg had any involvement that forms the basis for recovery within two years of the date Plaintiff filed his summons.

2.      Plaintiff has failed to demonstrate that he suffered inadequate medical care or deliberate indifference attributable to Dr. Turnberg.

3.      By his own admission, Plaintiff is not asserting a medical malpractice claim against Dr. Turnberg.  Without a medical malpractice claim, Plaintiff has no basis to recover against Dr. Turnberg based on the medications she prescribed for him.

4.      Plaintiff missed the deadline for submitting an expert report in support of his allegations related to medications.

5.      Plaintiff has failed to establish evidence to support a prima facie case of any intentional tort committed by Dr. Turnberg.

6.      Dr. Turnberg is immune from civil liability pursuant to the Pennsylvania Mental Health Procedures Act.

Respectfully Submitted,

**KILCOYNE & ASSOCIATES, LLC**


BY:    /S/ GREGORY S. NESBITT_____
        GREGORY S. NESBITT, ESQUIRE
        Attorney for Defendant,
        Martha A. Turnberg, M.D.

## CERTIFICATE OF SERVICE

I, GREGORY S. NESBITT, ESQUIRE, attorney for the Defendant, MARTHA A. TURNBERG, M.D., hereby certify that I served a copy of the foregoing Motion for Summary Judgment via U.S. Middle District Court Electronic Case Filing on July 29, 2005:

Dana Marie Oxley, Esquire                    Gerard J. Geiger, Esquire
Brett M. Woodburn, Esquire                   Newman, Williams, Mishkin,
Caldwell & Kearns                            Corveleyn, Wolfe & Fareri
3631 North Front Street                      712 Monroe Street
Harrisburg, PA 17110                         Stroudsburg, PA  18360


John R. Ninosky, Esquire                     Matthew Lee Owens, Esquire
Goldberg, Katzman & Shipman, P.C.            Marshall, Dennehey, Warner, Coleman and
320 Market Street                            Coleman and Goggin
P.O. Box  1268                               4200 Crums Mill Road, Suite B
Harrisburg, PA  17108-1268                   Harrisburg, PA 17112


Stewart Rosenblum, Esquire                   Raymond Swan, Esquire
308 Penn Estates                             401 Penn Street, Suite 100
East Stroudsburg, PA 18301                   Reading, PA 19601


Sean P. McDonough, Esquire
75 Glenmaura National Blvd.
Moosic, PA 18507


**KILCOYNE & ASSOCIATES, LLC.**


/S/ GREGORY S. NESBITT_____
GREGORY S. NESBITT, ESQUIRE
Attorney for the Defendant
Martha A. Turnberg, M.D.



DATE:_____